**FEDERAL DEPOSIT INSURANCE CORP., As manager of the FSLIC Resolution Fund, Plaintiff–Appellant,**

v.

**MAXXAM, INC., Intervenor Plaintiff–Appellee,**

v.

**Charles E. Hurwitz;  et al., Defendants,**

**Charles E. Hurwitz, Defendant– Appellee,**

**Federated Development Co., Intervenor Defendant–Appellee.**

No. 05–20808.

United States Court of Appeals, Fifth Circuit.

June 2, 2008.

Frank Thomas Hecht, Kathleen Holper Champagne, Ungaretti & Harris, Chicago, IL, James A. Brown, Gene W. Lafitte, Sr. (argued), Liskow & Lewis, New Orleans, LA, Colleen J. Boles, FDIC, Jonathan Goldman Cedarbaum, Kelley Brooke Snyder, Randolph Moss, Paul R. Wolfson, WilmerHale, Washington, DC, Lawrence H. Richmond, FDIC, App. Lit. Unit–Legal Div., Arlington, VA, for FDIC.

David J. Beck (argued), Russell Stanley Post, Beck, Redden & Secrest, Stephen D. Susman, Susman Godfrey, Jacks C. Nickens, Nickens, Keeton, Lawless, Farrell & Flack, Houston, TX, Gregory P. Joseph, Gregory P. Joseph Law Offices, LLC, New York City, for all Appellees.

*ON PETITION FOR REHEARING*

Before HIGGINBOTHAM, GARZA and BENAVIDES, Circuit Judges.

PER CURIAM:

I

Treating the Petition for Rehearing En Banc of appellees, Federated Development Co., Charles E. Hurwitz, and Maxxam Inc., as a Petition for Panel Rehearing, the Petition for Panel Rehearing is DENIED. No member of the panel nor judge in regular active service of the court having requested that the court be polled on Rehearing En Banc (Fed. R.App. P. and 5th Cir. R. 35), the Petition for Rehearing En Banc is DENIED.

II

The Petition for Panel Rehearing filed by the Federal Deposit Insurance Corporation is also DENIED for the following reasons.

The FDIC argues that we erred in describing Jeffrey Williams as the "head" of the Professional Liability Section, the same label applied by the district court. It urges that Williams' statement about "inconveniencing" Hurwitz was the direct evidence that we relied upon in affirming the district court's sanctions for improper purpose; because Williams was a mere staff attorney and Jack Smith, the head of the FDIC's Litigation Branch, quickly refuted Williams' statement, it maintains, we erred in affirming the sanctions award. Specifically, the FDIC urges, "Absent the catalyst provided by Williams' statement, the other evidence cited by the Panel cannot sustain a Rule 11 sanction for prosecuting for an improper purpose" and that "[i]t was Smith and [John] Thomas—not Williams—who decided how the FDIC's case against Hurwitz would be prosecut-

ed." Based on these conclusions, it asserts that the Panel's ruling that "the FDIC pursued the litigation 'with redwoods in mind and with a motivation of increasing the costs of litigation and forcing settlement' " is in error.

No matter Williams' official title, the factual inferences drawn by the district court regarding Williams' role are not erroneous. The panel opinion did not cabin its holding into the narrow grounds of agency and authority urged by the FDIC. The opinion recognized that lawyers within the FDIC disagreed as to whether to pursue the litigation to leverage a redwoods settlement but that some supported this strategy, stating, "[T]here is evidence that the FDIC saw the litigation and a related administrative forum both as a discharge of its statutory duty *and as an opportunity to pressure settlement for redwoods* by increasing costs and harassing Hurwitz through continued litigation, *despite opposition from several of its lawyers.*"[1] The opinion holds that the district court's conclusion that the FDIC's manner of prosecuting the case before the district court was sanctionable is supported by the record, and that we are not prepared to say that it is clearly erroneous. The opinion observes,

> [T]here is evidence that the FDIC made many motions to protect privileged documents and to resist discovery .... These tactics may have legitimately been pursued to avoid duplicative proceedings ... and is not independently improper ... but the district court's finding that the FDIC's actions, *considered collectively,* directly interfered with its proceedings and caused harassment and delay is not clearly erroneous or an abuse of discretion—excessiveness ani-

---

1. Emphasis added.

mated at least in part by the redwoods.[2]

And whatever be the significance of Williams' title, the FDIC put him on the pleading and before the district court. In short, the record also supports the district court's findings with respect to Williams' participation and influence in the case. The FDIC's original complaint against Hurwitz is signed by outside counsel; directly below the signature, listed as "Of Counsel," is Jeffrey Ross Williams. Jack Smith's and John Thomas' names are not on the complaint. Williams also wrote and signed a letter to the district court on behalf of the FDIC. In a July 27, 1995, "Authority to Institute PLS Suit" Memorandum from Jack D. Smith, Deputy General Counsel, and Stephen Graham, "Jeffrey Ross Williams, Counsel," was listed as the first contact. Williams (described as "Counsel, Professional Liability Section") was also the first author listed[3] on a "Request for Authority to Initiate Litigation" memorandum to the FDIC Board of Directors. This memorandum recommended "three basic claims" similar to those later brought by the FDIC. Jack Smith described Williams as part of the "FDIC settlement delegation" in a September 6, 1996, e-mail. In response to a Rule 30(b)(6) deposition request, the FDIC designated Williams as its witness. Williams described himself in his deposition as the "senior supervising attorney for professional liability matters that involve United Savings Association of Texas." Williams testified that he was the "representative of the agency" prepared to speak to the issues noticed and when asked for the basis of certain of his beliefs stated,

It's my involvement in most of the details of the investigation and subsequent litigation since my assignment to the matter in the spring of '94, my review of the files in the case, my day-to-day involvement and discussions with people within the legal division and within the director's offices and within other constituent divisions or sections of the FDIC in my shepherding of the litigation and the investigation since my involvement with it.

Williams also testified,

I was the primary staff employee of the agency responsible for responding to any requests by Mr. Hurwitz or his representatives to discuss the possibility of including the FDIC in the federal government's discussions with him, as well as to respond to other federal agencies' or departments' inquiries for information regarding the status of the FDIC's USAT matters.

Williams on a Friday afternoon sent a candid e-mail stating, "As I suggested many months ago, it may be advantageous for us to tie him [Hurwitz] up in lengthy depositions and commence a moderately aggressive discovery plan of our own that inconveniences him ...." And it is true that on the following Saturday afternoon, Jack Smith by forwarding this e-mail to the original addressees distanced himself from its blunt language, stating, "I have no desire to 'inconvenience' Hurwitz. However John and I are in agreement that we should now diligently press forward with discovery and depositions ...." But the district court was entitled to view his weekend addendum in the context of all that was before it, including the evidence that approximately one year earlier, Williams by e-mail to Jack Smith similarly accented that more was required to obtain the redwoods settlement. Specifically, Williams wrote,

---

**2.** Emphasis added.

**3.** The only other listed author was Robert DeHenzel.

I've [been] talking with my DOD contacts in the Base Closures Committee .... They are interested in talking with us ... on the possibilities and difficulties of including a closed military facility in a transaction with Hurwitz. He is discussing it with his folks and I think they would be an asset to tomorrow's meeting, making the key point even more clear that it will take more than FDIC's claims to get the trees and that FDIC remains an important part of exploring creative solutions to the issue. Let me know if they should be invited to the meeting.

In his deposition, Smith stated that he reviewed this e-mail and that to him, the language meant that "if what you want to do is get those redwood forests, don't look to the FDIC's claims to be able to do it for you .... It was going to take more than that." Whether this meant that other agencies' efforts and aggressive litigation tactics by the FDIC was required, or either of them, Smith conceded that the claims alone were insufficient. As our opinion explains, the district court was not clearly erroneous in finding on this record that the "something more" was the sanctioned conduct.

Also as we have pointed out, "A memorandum prepared by the FDIC and other agencies stated that 'it is clear that the FDIC and OTS claims combined would not have enough value to *swing a trade for the redwoods.*'"[4] An FDIC draft memo to William Kroener, which Jack Smith did not prepare but did edit,[5] states, "FDIC's claims alone are not likely to be sufficient to cause Hurwitz to offer the Headwaters Forest."

---

4. Emphasis added.

5. In his deposition, Smith responded "Yes" to the question of whether he had "any hand in preparing" the document and stated that "I was an editor and would have—I don't know

Finally, it bears emphasis that we are reviewing detailed findings of fact by the district court and its conclusion that the FDIC abused the discovery process in the district court and ought to be sanctioned. We are not persuaded that the district court's conclusion that pursuit of the Headwaters was an animating force for this conduct is clearly erroneous. But if we err in that judgment, the findings of fact otherwise sustain the holding that the FDIC engaged in sanctionable conduct.

The motion for rehearing is DENIED.

if this ever went forward, but before it would have gone forward to Mr. Kroener, I would have signed off on it." Smith believed that Williams had prepared the original draft of the memorandum that he reviewed.